CHESAPEAKE, OHIO & SOUTHWESTERN RAILROAD COMPANY v. LAUDERDALE COUNTY.

RAILROAD COMPANY. *Assessment by chairman of county court.* The trustee of the county is the proper officer, under the act of 1879, chapter 79, and subsequent acts amendatory thereof, to assess for county taxation the property of a railroad company which the State assessors have omitted to assess; and, upon the company disputing his assessment, the assessment of the chairman of the county court will be binding, if made at the proper time, and sustained by proof.

FROM LAUDERDALE.

Appeal in error from the Circuit Court of Lauderdale county.    T. J. FLIPPIN, J.

STEELE & STEELE for Railroad Company.

W. E. LYNN and JAMES OLDHAM for Lauderdale county.

COOPER, J., delivered the opinion of the court.

The Paducah & Memphis Railroad Company, a corporation chartered by both the States of Kentucky and Tennessee, undertook to build a railroad from Paducah to Memphis, and completed it in part at both ends, leaving an intermediate unfinished gap. The road ran through the county of Lauderdale, in this State, a distance sometimes stated in the record at twenty-four and sometimes at twenty-six miles. On this part of the road the right of way had been obtained from a large number of citizens, and a considerable portion of the grading done. The company had made a deed of

trust on its property and franchises to secure the holders of its bonds, and failing to meet its obligations, a bill was filed in the United States Circuit Court to foreclose the trust.  Such proceedings were had in the cause that the franchises and property of the company were sold under the decrees of the court, and bought by C. P. Huntington and others, to whom formal conveyances were made, early in August, 1881, by the trustees of the trust assignment and by the Paducah & Memphis Railroad Company, of the franchises and property, which were approved by the court.  Afterward, on the 9th of the same month, the purchasers and others incorporated themselves under the act of 1877, chapter 12, which expressly authorizes the purchasers of railroads under mortgages to incorporate themselves.  The new corporation took the name of the Chesapeake, Ohio & Southwestern Railroad Company, went at once into possession of the old road and its property, and began to complete the unfinished part of the road.  About $80,000, as the general superintendent of the new company testifies, were spent in Lauderdale county, up to January 10, 1882, and the entire road was completed in July of that year. The purchasers under the foreclosure sale made a formal conveyance of the franchises and property bought to the new company, on January 26, 1882.

Our law requires the assessment of property for taxation to be made to the owner on January 10th, of each year.  The railroad assessors omitted to assess the property and franchises of the railroad company in the county of Lauderdale for the year 1882.  In

December, 1882, the trustee of the county, who was the collector of county taxes for that year, undertook to supply the omission, and assessed the franchises and property of the Chesapeake, Ohio & Southwestern Railroad Company in Lauderdale county, under the act of 1879, chapter 79, and subsequent acts amendatory thereof, at $130,000. The company disputed the assessment, and had a revaluation before the chairman of the county court, who reduced the assessment to $120,-000. Thereupon, the company brought the proceedings into the circuit court by *certiorari*, upon the ground taken in its petition that the assessment was of the road as completed, whereas, on January 10th, when the assessment was to be made in contemplation of law, the company owned not a mile of finished road, and only the releases of four or five land owners of the right of way. The circuit judge dismissed the petition and *certiorari* on motion, but this court reversed his judgment, and remanded the cause to be proceeded in: *Railroad Company* v. *State*, 13 Lea, 348. The substance of our decision at that time was that the franchises and property should be valued as of January 10, 1882, not as they were when the work of that year was added, and that the *certiorari* was the proper remedy for the wrong, if any.

Upon the trial, after the remand, the circuit judge quashed the assessment of the chairman of the county court to the extent of one-half of the amount, and dismissed the petition in other respects. The company appealed in error, and the county has brought the case up by a writ of error.

It now appears from the evidence introduced, as shown by the bill of exceptions, that both the county trustee and the chairman of the county court made their assessments as of January 10, 1882, each finding that the property and franchises of the company in the county of Lauderdale were worth the amount assessed by him as of that date. It further appears that the old company had graded a considerable part of the road-bed within the county, and had secured the right of way from a large number of property owners along the line by deeds of release, which are introduced in evidence. And the general superintendent of the new company states that the company had expended within the county before January 10, 1882, as much as $80,000, referring to the accounts of the company for greater certainty, which have not been produced. He adds that on January 10, 1882, about one-half of the expense in preparing the road-bed for ties in said county had been incurred, and a few hundred cross-ties scattered through the county. He says the cost of the steel rails afterward laid was about $5,000 per mile, and he adds: " I think the cost of right of way and preparation of road-bed for rails would, per mile, exceed that of the steel rails."

By the acts of 1879 and 1883, all collectors of taxes are made assessors of property for taxation, which has been omitted for any cause to be taxed by the regular assessors, and the trustee of a county is the collector of taxes for the county, within the meaning of the act: *State* v. *Railroad Company,* 14 Lea, 56; *Franklin County* v. *Railroad Company,* 12 Lea, 521. And

the act of 1882, chapter 16 (special session), expressly names him as the proper assessor of omitted property. And we think the new company was the owner of the franchises and property of the old company on January 10, 1882, although the deed of the 26th of that month may have been necessary to perfect the title. The act of incorporation of August 9, 1881, in terms clothes the new company with all the rights acquired under the purchase at the foreclosure sale. And the new company was then in the actual possession and use of the franchises and property.

The only remaining question is whether the circuit court, upon the facts shown on the trial, had any right to interfere with the assessment of the chairman of the county court. If the proof had sustained the claim of the petition for the *certiorari,* that the assessment of the chairman had been made upon the value of the property after the road had been completed, the duty of the court would have been plain to quash the assessment, and remand to the chairman of the county court to make a proper assessment. But the proof shows that the assessment was on the property and franchises as they existed on January 10, 1882, and that the assessment does not exceed half the value of the completed road-bed, without reference to the franchise and personalty of the company. Under these circumstances, I am inclined to think the assessment of the chairman of the county court is final (*Knight, ex parte,* 3 Lea, 401; Cooley on Taxation, 157, 533), but we all concur in holding the assessment to be in accordance with the facts, as presented to the chair-

Railroad Company *v.* Lauderdale County.

man of the county court, as well as the facts brought before the circuit court, if the latter can be looked to, and to be a fair valuation of the property and franchises on January 10, 1882.

The judgment of the circuit court will be reversed, and the petition dismissed, with the costs of the cause.

•

## PETITION TO REHEAR.

Upon petition to rehear, COOPER, J., said:

The main contention of the railroad company, in its petition for rehearing, is that the valuation of the circuit judge is best sustained by the facts.

The property and franchises of the company were assessed for county taxation, under the act of 1879, by the county trustee, as omitted property, in December, 1882. The company disputed the valuation, and caused a revaluation to be made by the chairman of the county court, and then brought the case into the circuit court by *certiorari,* upon the ground, principally, that the assessment had been made on the road as completed, when it should have been on the property as it was on January 10, 1882. On the hearing, the proof was clear that the valuation had been made as of January 10, 1882. Under these circumstances, if the valuation of the chairman be not conclusive, the burden is upon the company to show clearly that there was error.

The revaluation of the chairman of the county court was made upon evidence furnished by the company.

Railroad Company v. Lauderdale County.

This evidence was embodied in a bill of exceptions, and made a part of the petition for the writ of *certiorari*. It consisted of the testimony of the general superintendent of the construction of the line through the county, and a certified copy of the assessment of the State assessors on other parts of the road. The superintendent says he built the road in the county, and thinks he knows its value perfectly. "I mean," he adds, "that I had charge of the construction and superintended the same, and know its condition, value and cost." He then says that a good deal of work had been done on the line by the old company, and the largest part of the right of way had been secured by that company. And adds: "Possibly this Chesapeake, Ohio & Southwestern Railroad Company had expended as much as $80,000 in this county before January 10, 1882, but I can not tell as to this, as I have not the account with me. The books of the company will show." The company had also secured the right of way over some six or eight tracts of land, and some four hundred cross-ties. The cost of steel rails was about $5,000 a mile, and the cost of the right of way and preparation of road-bed for rails would exceed per mile that of the steel rails.

The company was content to have the revaluation made on this proof, and if it sustains the assessment of the chairman of the county court, it is difficult to see how the assessment can be altered, upon *certiorari*, by the circuit court. The only new evidence introduced at the hearing in the circuit court, of any importance, was the testimony of a member of a firm of

contractors, who says that his firm had the contract for grading the road-bed from Ripley north to Dyersburg, and the bridging and trestling from Ripley south to Hatchie river, and that by January 10, 1882, the company had paid the firm $84,000 for grading the road between Ripley and Dyersburg, mostly in Dyer county. He also estimates the grading previously done in Dyer county at $1,000 a mile, or $24,000. It will be noticed that the firm did not contract for all the grading in Lauderdale county, although the superintendent says that most of the money paid out by the company was to that firm.

The testimony of the general superintendent of the company as to the amount of expenditures in the county prior to January 10, 1882, is more conclusive than the testimony of a single contractor. If he were in error, it would have been easy to show the fact by the books of the company, to which he refers. If to that amount we add the old grading, the releases of the right of way as proven, and the franchise, we can not say that the assessment of the chairman of the county court has been successfully impeached. It is true that the State assessors only assessed the finished road in other counties at $5,000 a mile. But the general superintendent himself testifies that the steel rails alone cost $5,000 a mile, and that the preparation of the road-bed for the rails would exceed per mile the cost of the steel rails. And the assessment of the State assessors, while persuasive evidence, is not conclusive as to the value of another part of the same road. Even if the petition of the company for the

writ of *certiorari* calls for a revaluation in the circuit court, and if the law authorizes that court to make a revaluation, we think that the company has failed to make out a sufficient case to warrant an interference with the chairman's assessment.

Another point made is that this matter is *res adjudicata* by the judgment when the case was before us upon the sufficiency of the petition for the writ of *certiorari*. The idea seems to be that it was then adjudged that the company was entitled to relief, whereas now, under the opinion delivered on a former day of this term, the company gets no relief. But the position assumed is based upon a misapprehension of what was formerly decided. There can be no doubt that, as a general rule, a former judgment in a cause is conclusive, both as to matters of law or fact actually adjudged: *McNairy* v. *Nashville*, 2 Baxt., 251: Wells on Res Adj., sec. 613, *et seq.* But the only matter adjudged upon overruling the motion to dismiss the company's petition was that the facts therein stated, and which were admitted by the motion, were sufficient, if true, to require a trial on the merits: *Rodgers* v. *Dibrell*, 6 Lea, 69; *Kirkpatrick* v. *Utley*, 14 Lea, 96. The court was of opinion, on the case then before it, that if the assessment complained of was made, as alleged in the petition, on the road as completed instead of in its incomplete state on January 10, 1882, it was invalid, and should be quashed. The opinion then delivered concludes thus: "It is, however, only necessary to decide that the assessment now before us (as it is set out in the petition), is invalid, and not

according to law, and the petition had merits on its statement of facts." And the judgment of the court merely overruled the motion to dismiss, and remanded the cause for further proceedings. The proof, on the hearing of these further proceedings, failed to show that the assessment was made of the completed road, and established the fact that it was made as of January 10, 1882. The new proof, moreover, as we have seen, does not satisfy us that the valuation of the chairman was erroneous, even if that point could be gone into under the petition.

The petition for a rehearing must, consequently, be dismissed.